Please be seated, Madam Clerk, if you'd call the case, please. May it please the Court, Counsel, Brian Irvin on behalf of the appellant, Merton Mesmore, and his personal representative, the estate of Mary Mesmore. Mary Mesmore was a former resident of Defendant's Assisted Living Facility. This appeal arises out of an alleged arbitration provision. An arbitration provision that was asserted six months after this litigation had ensued and after defendants had already submitted to the jurisdiction of this court. The trial court granted defendants a motion without addressing several issues, raising regarding the validity of this document, as well as other state contract defenses. Before I get into the fact that the arbitration provision was not valid, defendant waived the ability to even enforce arbitration by taking actions inconsistent with arbitration. Under Illinois law, a party waives arbitration when their actions are inconsistent with enforcement and indicate an abandonment of a right to enforce arbitration. And in this case, defendants took several actions inconsistent with seeking enforcement of arbitration. First, they answered defendant's complaint three months after it was filed and at that time did not raise an affirmative defense asserting an arbitration provision. They didn't move to dismiss based on an arbitration provision at that time. Defendants subsequently appeared before Judge Fackel and, without objection, entered into a 218 order setting discovery deadlines. Days later, defendant issued discovery, including requests for production, interrogatories, 213F interrogatories, Rule 237. Again, none of these discovery tools would be available at arbitration. And then in May of 2016, six months after this case had been filed, defendant notified plaintiff of an arbitration provision and then moved to compel arbitration finally on May 19, 2016. Simply stated, defendant's actions were inconsistent with a right to enforce arbitration. If they truly wished to enforce arbitration, they could have preserved their right, they could have asserted it, but instead they appeared in court, utilized the court's discovery tools, and then, after doing so, attempted to compel arbitration. Before even getting into the validity of the arbitration... But what about discovery tools? Wasn't it within eight days or so that the plaintiff had an answer to the discovery and then they withdrew? Right, but... So how can you say they utilized the discovery? Because those tools, I understand that while it is true that ultimately defendant notified plaintiff that the discovery was issued in error, at that time, first off, it should be noted that there's no mention that it was being withdrawn based on an arbitration provision. That didn't happen until a month later. But nevertheless, Illinois cases such as Woods and Schroeder addressed that the act of conducting discovery is inconsistent with arbitration. The fact that plaintiff didn't get around to answering discovery doesn't necessarily take away from the fact that defendant nevertheless utilized or used a tool that would not be available at arbitration. And the same can be said about the fact that defendants, if we're looking at answers, I mean, defendant answered the complaint without asserting any affirmative defenses. In this case, though, there was never a request for the trial judge to rule on something that would be subject to arbitration, was there? That's correct. And that's one of the issues that was raised in defendant's motion. But it's important to note that this case, again, was filed in November. Defendants were served in December and took nearly three months to answer the complaint. So the fact that no substantive issues had been ruled on is in part due to delay by defendant. But arguably, if this policy were accepted, I mean, this case could have gone on for two years through discovery without there ever being a substantive motion or determination made by the court. So although that is one way to waive arbitration, is to submit an issue that would be subject to an arbitration provision to the court for decision, it's not necessary. The standard remains looking at a party's conduct and determining whether their actions are inconsistent with arbitration. Even if this court does not find that defendant waived the right to arbitration, defendant nevertheless failed to meet its burden of establishing that there is a valid arbitration agreement. You know, Mary's name appears right under the husband's name, or Norton's name, right? In two different places in the document, the residency document. There is handwriting that appears to say Mary Ruth, correct. And we don't know. The question is, does that refer to Mary Mesmore? Did Mary Mesmore write her name Mary Ruth? Did Merton Mesmore write her name? Was it fabricated? We don't know because defendant's motion did not include an affidavit. All that was included for defendant's motion to compel was this document that shows handwriting referring to Mary Ruth. At minimal, that would be an issue of fact that would defeat defendant's motion or at least require discovery or an evidentiary hearing. But the fact remains that the burden is on defendant to establish that there was a valid agreement between the facility and Mary Mesmore. And a document that has not been substantiated, which contained no signature of actually Mary Mesmore, which was not notarized, which was not witnessed, which was not accompanied by an affidavit showing that it was valid and enforceable against Mary Mesmore, does not mean that it's a burden of establishing that there was a valid agreement. At minimum, there should have been an evidentiary hearing if it's even... There's promeptory evidence that it says resident and then underneath spouse. Both spouse, correct. Correct. So that's, again, another question that... There's a signature from the executive director. And that portion you're referring to, Your Honor, is the residency agreement. The arbitration provision was not included on that page. There's a separate arbitration addendum that was attached, which only bears a signature that appears to be Mary Mesmore and below is Mary Ruth. So again, it begs the question, was that arbitration addendum part of that residency agreement? These are questions that defendant's motion does not answer. It wishes for the court to make a determination that this is a valid agreement based on a signature that we don't know is even valid. And for the particular arbitration addendum, there's not even a signature of anyone from the facility. They've provided no witness who will testify to the genuineness of the document, which would not even allow to get into evidence under Rule 901. These are issues that were never answered by the trial court. The trial court decision merely made a determination and, we believe, a factual finding that Mary Mesmore signed that agreement. And just one thing I'd like to also clarify is that Merton Mesmore, the husband and now representative of this case, assuming that he'd signed on both their behalf, defendant has provided no authority that he had authority, actual authority, to bind her to an arbitration provision. Third District case law, the case Curto v. Alina, says that a resident can only be bound by an arbitration agreement if the person signing on their behalf has actual authority to do so. Defendants provided no evidence that Merton Mesmore, as spouse, had that authority. And that burden, again, is on the defendant. So finally, now withstanding my first two points, the trial court's decision requires reversal because it did not make a substantive disposition of all the issues raised by plaintiff in opposition to the arbitration provision. The case Sturgill v. Santaner recognized that under the Illinois Uniform Arbitration Act, Section 2A, if a party denies the existence of an arbitration agreement, the court must render a substantive disposition of all issues raised on motion. And in doing so, the trial court was required to separately address each issue raised by the motion, supporting the decision with factual findings and legal reasons. And in this case, the trial court, although it analyzed the validity of this arbitration agreement under the Federal Arbitration Act, under the Illinois Uniform Arbitration Act, and under the Illinois Healthcare Arbitration Act, it made no findings or legal reasons regarding its denial, I assume its denial of the waiver argument that was raised by a plaintiff, and did not address whether there are any material issues of fact regarding the validity of the agreement, did not make any findings regarding public policy considerations that were raised by a plaintiff, and finally, the trial court was silent regarding state contract offenses such as lack of consideration. So I guess the court was at stake here, and that is that defendants, by moving to compel arbitration, are seeking to deprive the plaintiff of the constitutional right to a jury. And they've asked, and the trial court granted their motion, despite waiting six months to move to compel arbitration, and based on a document that was admissible under the rules of evidence, without allowing the plaintiff to conduct discovery or hold an evidentiary hearing. So the plaintiff requests, or the appellant, I'm sorry, requests that this trial court's decision be reversed, or alternatively that this court remand down to the trial court for an evidentiary hearing, and with instructions regarding any issues of internal fact. If there's any questions, I'll take them, and if not, I will save for the ball. Thank you, counsel. Thank you. Counsel, you may proceed. Thank you, Your Honor. David Maxey on behalf of the defendants. I'm going to basically just go through the points the plaintiff made. If we go through here, his initial point was waiver. Clearly, there was no waiver here, as the courts have construed that. There was a delay in appearing and answering, but once there was an appearance and answer within a few months, we came forward with sending a letter to the plaintiff's counsel, letting them know of the arbitration agreement, and then moving to compel arbitration. Under those circumstances, we never got a ruling from the court. We never saw a ruling from the court. There was one time that we appeared in court based upon a case management conference, but that alone is not evidence that we were seeking judicial relief in this case. Once we became aware of the arbitration clause, it was filed, and we moved to compel. So I believe that the waiver argument is there's no evidence of it here. Let's go to the Sturgill case. In that case, first of all, it's a very complex case, where the court says that when the trial court is confronted with a motion to compel arbitration and the plaintiff denies that an agreement exists or the party who's opposing it denies the agreement, in those circumstances, the trial court must make specific findings. In this case, the trial court did make a specific finding.  And as Justice Carter stated, that agreement was attached to the motion to dismiss. It's prima facie evidence because it contains the signature of both Mr. and Mrs. Messmore. And the plaintiff does nothing to refute that, other than at some point deny it in pleadings that that may have been, we don't know if that's her signature. Well, we presented a prima facie evidence of that signature by attaching the agreement. And the trial court found that that was Mary and Merton's signature to the arbitration addendum, as well as to the residency agreement, which incorporated the arbitration addendum. And in that case, that was the key finding that was necessary to bind them to this agreement. The idea that the trial court has to issue a ruling on waiver is not necessary because under Section 2A, it says if the party denies the existence, the waiver argument has nothing to do with the existence of it. Now, that leaves us with the consideration argument. Here, there was consideration within the agreement. Both parties agreed to arbitrate the disputes. There was only one dispute regarding eviction proceedings that may not be arbitrated. Why not have separate agreements for each person? And what about the argument that Mary was only signing as a spouse and not exercising her independent decision? Yeah, under that, under the agreement itself, the residency agreement, in the opening paragraph, the second paragraph, the residency agreement was between Sylva's operations and Merton and Mary Messmore. And then that's defined as resident or you. And then it says if two persons occupy this apartment, both will be considered a, quote, resident, end of quote, as used in the agreement. So pursuant to the terms of the agreement. As a resident? As a resident of the. . . So there's a pretty good argument to be made that husband was signing for wife. And wife, long ago we changed the chattel. . . Oh, I understand. Approach to marriage where husbands could make the decisions for their spouses. Why not have two separate independent arbitration agreements for each resident? Well, it provides that this agreement is the husband and wife were the residents. . . And under the agreement, Merton signed and then Mary signed. As spouse. As spouse. And likewise, under the arbitration agreement, same thing. Merton signs and Mary Ruth signs. But under their definitions, they're both deemed to be residents. So. . . All right, I understand your argument. Okay, so they could. . . I mean, conceivably she could have signed as the resident and he could have signed underneath as the spouse. For whatever reason, they decided to do it this way. But either way. . . And it's that reasoning that causes me to pause just a little bit. I understand. I understand that you're concerned there. I understand your argument as well. Thank you. So there comes forward the prima facie evidence of the agreement. We see nothing except supposition and speculation as to how it was signed. They needed more than that. The court found here, specifically found that this was a valid agreement, that it was signed by the parties, and therefore enforced the arbitration agreement. Going through and focusing instead, in his opinion, of course, the trial judge was focused on whether the notice provision complied with the Illinois Federal Law Arbitration Act, which ultimately the court said that it did. There was one other point that there was something about the plaintiff's argument assuming that Merton had signed on behalf that he had the no authority. We don't argue that. We say that both signatures appear on this document. And I believe those are the main points that he raised, and I believe that I've answered them. If the court has any further questions, I'm happy to take them. He's arguing that the judge did rule on everything. What do you say about that? That goes to Section 2 of the Arbitration Act, which says that the judge, if a party denies the existence of the agreement, then the trial court must address all the issues that go to the existence. The existence is whether you have a valid agreement and whether they signed it, and they did. According to the court, he answered that question. It was valid. They did sign it, and he addresses that. The other issue is whether waiver. Waiver doesn't deal with the existence of it. It deals with the conduct here. And the court implicitly, by not addressing waiver, and by enforcing the agreement, found that the defendants didn't waive their right to arbitrate. And then the issue of consideration, again, that could be. But under the circumstances of this case, the court, by finding that they signed it and enforced the agreement, found that there was adequate consideration. And the agreement itself speaks to the mutual obligations. They both signed the residency agreement, which incorporates, by reference, the arbitration addendum. And in that arbitration addendum, they both agreed to first mediate and then arbitrate, if necessary, their disputes on any issue except addiction. Thank you very much. Thank you. Counsel, you may proceed. I believe that the question is why? Why did the facility have one, or allegedly have one, agreement for both Merton and Miriam Mesmoir? And if they did have one agreement for both of them, and assuming, which hasn't been established by the evidence presented in this case, that Merton even signed, that would require Merton Mesmoir, as spouse, to be signing on behalf of his wife. And defendants have not provided any evidence that he had the authority to do that, let alone that that's what the agreement actually stood for. Again, these are factual disputes. These are issues of fact that should, at minimum, require a limited discovery or an evidentiary hearing. And finally, just pressing on the substantive disposition issue, even if this Court assumes that the waiver argument somehow does not go to the existence of an arbitration agreement, the fact that the Court was silent regarding whether this agreement was validly supported by consideration requires reversal. That's an issue that must be addressed because if that argument is accepted, this is an invalid agreement and it would be unenforceable against Miriam Mesmoir. So in conclusion, we again ask that the courts reverse the trial court's decision and alternatively remand and allow plaintiff, if necessary, to perform limited discovery or hold an evidentiary hearing regarding any material issues of fact. Thank you. Thank you, Counselor. The Court will take this matter under advisement and render a decision. And we will now take a break for a panel change. All rise. The Court stands recessed.